### PUCKETT v. PATTON. (No. 12082.)

Court of Civil Appeals of Texas. Fort Worth. Feb. 9, 1929.

Rehearing Denied March 16, 1929.

John B. Rhea, of Wichita Falls, for appellant.

J. R. Wilson, of Wichita Falls, for appellee.

CONNER, C. J. Appellee, E. L. Patton, on June 23, 1927, borrowed from appellant, Ray Puckett, $200, and executed therefor two notes, one in the principal sum of $200, payable $40 per month, together with interest at the rate of 10 per cent. per annum, and as security executed a chattel mortgage on a Dodge automobile.

Appellee instituted this suit, alleging that he had made two payments of $40 each on the $200 note, and, not being able to pay the third payment, secured an extension of the payment for 30 days, but that, before the expiration of the 30-day extension, appellant had wrongfully, unlawfully, and willfully sold and converted said automobile to his own use and benefit. Appellee alleged that at the time of such conversion the automobile was worth $550, and this suit was instituted to recover that sum, together with exemplary damages in the sum of $500.

Among other things, defendant denied the extension of the indebtedness, and averred that, upon the maturity of the third payment due on the $200 note, the plaintiff declared himself unable to make the payment, and promised to deliver the automobile to defendant, which he did, as was authorized by the terms of the mortgage; that more than 30 days after the same had been so delivered, plaintiff having made no further effort to pay the installment, defendant sold the same in satisfaction of plaintiff's debt.

The case was submitted to a jury on special issues, in answer to which the jury found that defendant had agreed to extend the note in question for a period of 30 days, as alleged by the plaintiff; that the reasonable "cash market value" of the automobile at the date of the sale was $450; that the automobile was not surrendered by plaintiff to defendant, as alleged, in full satisfaction of the debt due; that defendant converted the automobile with fraudulent, malicious, and willful intent to deprive the plaintiff of the car, and plaintiff was entitled to $200 as compensation therefor. Upon the verdict so returned, the court entered judgment in favor

of plaintiff for the sum of $533.80, with interest and costs, to which defendant excepted and has duly prosecuted this appeal.

■ Among other averments of plaintiff below not heretofore stated were allegations to the effect that, at the time of the execution of the mortgage and the $200 note, another note for $45 was also executed for the payment of interest on the $200 note, and that hence the contract was usurious. Article 5069 of the Statutes defines usury as "interest in excess of the amount allowed by law," and declares that all contracts therefor are contrary to public policy and void. But to authorize a recovery therefor article 5074 of the Statutes provides that a party who wishes to avail himself of the defense of usury must do so by a duly verified special plea. Appellee's plea was unverified, and the court erred in refusing to sustain defendant's exception to the petition on that ground, and erred in receiving evidence upon which the plea was based. Moreover, the evidence relied upon was the acceptance by appellant of the $45 note, which it appears from the evidence without contradiction appellant later destroyed without any effort to claim or collect that note.

■ We also conclude that appellant's exceptions to the petition, to the verdict of the jury, and the judgment relating to the issue of exemplary damages, should have been sustained. The only actionable conduct on appellant's part made the basis of the claim for exemplary damages was the fact that the automobile was sold by appellant before the maturity of the third payment, as extended. Appellant testified without contradiction that appellee had been slow in all payments made, and that, upon his failure to make the third payment, he notified appellee to bring the automobile in, which he did without complaint, and that thereafter, not having been able to hear from appellee, the car was sold. We fail to find any evidence of any heated controversy between the parties prior to the sale, and mere allegations of the pleader to the effect that the sale was made wrongfully and maliciously by appellant, are not sufficient.

■ We think there is yet another error assigned that must be sustained. The record discloses that the issue of value of the automobile in question was closely contested. Evidence in behalf of appellant was to the effect that the value of the automobile was not in excess of $200, and that he had only sold it for $300 in cash and trade, after having reconditioned the same. The jury found the value of the car to have been $450, and

upon this issue appellee, among other things, offered the testimony of one or more witnesses identifying what is termed the "National Blue Book," and read therefrom values given; the value of the model and style of the car in question being stated as $500. It further appears, however, that the book is one published in Chicago, and does not, as we read it, purport to cover values in this trade territory. Moreover, the book does not purport to give the sale values of such cars, but loan values only, and we think that it was error to offer in evidence the book and statements therefrom. Of course, it is quite familiar that market reports shown to have been accurately kept of sales of cattle, produce, etc., in the locality in question, is receivable. But we are not prepared to hold that this rule would apply to an isolated sale of a secondhand automobile. Its cash market value of necessity must rest upon its age, the section of country in which it has been used, and the care taken of it by its driver. The value of an automobile sold and used by a careful owner or driver in a section of country where the roads are macadamized or otherwise improved, and the value of the same model sold at the same time in a section of country where the roads are not improved, and the car driven by hired drivers in fulfillment of such orders, as is often the case in our oil fields, such as Wichita county, is necessarily different. In other words, the class of property to which the automobile in question belonged and the variation in conditions, character of use, etc., is so variant from that of staple goods and live stock, for which there are public markets, as to render the "Blue Book," purporting to state general loan prices in sections of the country other than in the Wichita county territory, too uncertain as a guide to the value of the automobile under consideration. The fact that the witness Stovall and others testified that they were acquainted with the automobile in question, that it was in good condition, and gave their opinion of its value, only emphasized the fact that the Blue Book was not the best evidence to establish the issue relating to value.

We further venture to add that some of us think that appellee's statement while testifying that "I borrowed it (the $200) in order to send my wife away under a physician," should have been excluded by the court as immaterial, as urged by appellant.

For the errors indicated, the judgment below must be reversed, and the cause remanded for another trial not inconsistent with this opinion.